**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JANELLE GUNNING,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:25-cv-01040** |
| | ) | **Chief Judge Campbell/Frensley** |
| **CITIBANK, N.A. and** | ) | |
| **COUCH LAMBERT, LLC** | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Janelle Gunning ("Plaintiff") filed this action under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). Docket No. 1. Plaintiff alleges that Citibank, N.A. and Couch Lambert, LLC (collectively, "Defendants") have committed multiple violations of the FDCPA during their efforts to collect an alleged credit card debt from Plaintiff. *Id.* at 1–6. This matter is now before the Court upon Couch Lambert, LLC's Motion to Dismiss for Failure to State a Claim. Docket No. 13. Couch Lambert, LLC has also filed a supporting memorandum and other supporting documents. Docket Nos. 14, 14–1, 14–2. Plaintiff has filed a Response in Opposition. Docket No. 17. Defendants have filed a Reply. Docket No. 18.

For the reasons set forth below, the undersigned recommends that Defendants' Motion (Docket No. 13) be **GRANTED**.

## I. BACKGROUND[1]

Janelle Gunning is a Tennessee resident who brought this action against Citibank, N.A. ("Citibank") and Couch Lambert, LLC ("Couch"). Docket No. 1, p. 1. Accepted as true for the purposes of this motion, the facts laid out in Plaintiff's Complaint are as follows.

[1] Except where noted, all facts are taken from the Complaint (Docket No. 1) and are accepted as true for the purpose of ruling on this Motion.

On June 4, 2024, Plaintiff was served with a lawsuit from Citibank in Davidson County General Sessions Court (Citibank, N.A. v. Janelle A Gunning, Case No. 24GC4496) regarding an alleged unpaid debt on a personal Citibank credit card account. *Id.* at 2. Plaintiff alleges this was the first communication from Defendants regarding the alleged debt. *Id.* The state lawsuit contained an affidavit from Ms. Kimberly Talbott, which was dated February 22, 2022, and supported collection activities taken by Defendants. *Id.* at 4. Plaintiff contends this affidavit falsely represents the current debt status and account balance, exhibits classic robo-signing characteristics, and was improperly submitted under the Tennessee Rules of Evidence. *Id.* at 4–5.

On July 4, 2024, Plaintiff reached out to Ms. Elizabeth Cash, an attorney for Couch Lambert, LLC, requesting verification of the debt. Docket No. 1–2, p. 40. Ms. Cash responded to Plaintiff's request with a verification packet in following weeks, and Plaintiff acknowledged the response while requesting additional verification materials. *Id.* On July 23, Plaintiff requested chain of title and proof of ownership of the alleged debt, which she contended Defendants had not provided. *Id.* Defendants responded to the July 23 email on July 24 and stated they considered the validation packet to provide a sufficient response. *Id.* at 42.

Plaintiff additionally alleges systemic false attestation practices under 15 U.S.C. § 1692e(10) & § 1692f and harassment under 15 U.S.C. § 1692f. Docket No. 1, p. 4. As a result of the alleged violations, Plaintiff states that she has suffered from emotional distress, anxiety, and reputational harm. *Id*. at 5. Plaintiff seeks damages that include statutory damages for each FDCPA violation, actual damages from the emotional distress and related harm from the violations, litigation costs, expenses for time and research, and damages for ongoing harm. *Id.*

## II. LAW AND ANALYSIS

### A. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.*, *quoting Twombly*, 550 U.S. at 557 (internal brackets omitted).

When ruling on a defendant's motion to dismiss, the court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). The court should allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. But, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555. "'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted). Mere recitation of the elements of a cause of action or an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Iqbal*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 555. The court must "accept as true all non-conclusory allegations in the complaint . . . ." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). However, the Court does not have to accept unsupported legal conclusions. *Iqbal*, 556 U.S. at 678. "The pleadings of pro se petitioners

are held to less stringent standards than those prepared by attorneys, and are liberally construed when determining whether they fail to state a claim upon which relief can be granted." *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). While this Court will liberally construct the pleadings of pro se plaintiffs, any plaintiff is still required to meet the basic pleading standards. *Id.* at 714.

The Sixth Circuit has authored multiple rulings in the context of the FDCPA. Regarding the statute of limitations for plaintiffs brining a claim regarding an alleged FDCPA violation, "'[t]he date on which the violation occurs' determines when the one-year statute of limitations starts running. Find the FDCPA violation in the complaint. Count out a year. That determines the statute of limitations." *Bouye v. Bruce*, 41 F.4th 485, 491 (6th Cir. 2023), *citing* 15 U.S.C. § 1692k(d) (internal citations omitted); *see also Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) (holding "[t]he FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened."). Furthermore, "every alleged, discrete FDCPA violation has its own statute of limitations." *Bouye*, 41 F.4th at 490.

**B. Defendants' Motion to Dismiss**

Defendants request that the Court "dismiss Gunning's Complaint in its entirety and with prejudice for failure to state a claim upon which relief can be granted." Docket No. 14, p. 5. Defendants centers their argument around five contentions. *Id.* at 5–11.

**1. Plaintiff's Claims are Time-Barred under 15 U.S.C. § 1692k(d)**

Defendants state that the statute of limitations for liability under violations of the FDCPA runs for only "one year from the date on which the violation occurs." *Id.* at 6, *citing* 15 U.S.C. § 1692k(d). Defendants assert that the general federal rule is that the statute of limitations clock starts running when a plaintiff knows our should have known certain facts related to their injury. *Id.*, *citing Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022). Defendants contend

that Plaintiff's complaints about the stale affidavit, robo-signing violations, authentication fraud, and systemic false attestation practices rise out of an affidavit attached to the state court complaint. *Id*. As such, Defendants state that Plaintiff knew or should have known about the possibility of a claim based on the evidentiary allegations when she was served with the affidavit and lawsuit on June 4, 2024, and proceeded to file an answer and subsequent motion to compel arbitration. *Id.* at 6–7. Defendants assert that, because Plaintiff's Complaint was brought against Defendants on September 15, 2025, Plaintiff's Complaint is time-barred under 15 U.S.C. §1692k(d). *Id.* at 7.

**2. Couch Complied with the FDCPA**

Defendants next assert that Couch complied with the FDCPA in their response to Plaintiff's requested validation of her alleged debt. *Id.* Defendants assert that "[t]he FDCPA does not set forth specific verification requirements," adding, "the Seventh Circuit joined with the Fourth and Ninth Circuits holding that the statute requires: 'nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed.'" *Id.* at 8, *citing Walton v. EOS CCA*, 885 F.3d 1024, 1027 (7th Cir. 2018). Defendants assert that upon Plaintiff's requested verification, Couch mailed Plaintiff a letter detailing:

> 1) Couch's internal file number; 2) the name of the creditor; 3) the brand name of the product; 4) the account holder's name; 5) the current address on file of the account holder; 6) the last four numbers of the account number; 7) the current balance due; 8) the date the account was opened; and 9) the date of the last payment made on the account.

*Id.* at 7–8 (citation modified).

Defendants assert that the validation materials sent by Couch "exceeded those [validation requirements] not only set forth in the FDCPA but also those deemed acceptable by the *Walton* Court. Couch equipped Gunning with the necessary information to evaluate the creditor's claim." *Id.* at 9.

### 3. Couch is not Required to Respond to Plaintiff's Third Letter

Defendants assert that after validating Plaintiff's debt, "Couch is not required to respond to every subsequent whim of Gunning." *Id.* Defendants compare the case before this Court with that of *Quintilla*, where "the Court granted the defendant's motion to dismiss when the plaintiff filed a claim over 'nit-picky grievances' with the documents the defendant was not even obligated to produce under 15 U.S.C. §1692g." *Id.*, *citing Quintanilla v. The Bureaus, Inc., et al.*, No. 3:19-cv-05161-RBL, 2019 U.S. Dist. LEXIS 115626, 2019 WL 3028104, at *3 (W.D. Wash. Jul. 11, 2019). Defendants assert that once they validated Plaintiff's request, responding to additional claims from Plaintiff would be beyond the purview of the FDCPA. *Id.* at 10. Defendants contend that because they had no obligation to respond to further validation requests, no cause of action can exist for any alleged harm from the requests, and the claims should be dismissed. *Id.*

Regarding Plaintiff's alleged physical ailments stemming from Defendants' actions, Defendants assert that "[a] bare anxiety allegation says nothing about severity. Someone who feels slightly nervous has not suffered the type of severe emotional harm cognizable at common law. Were that so, 'everyone would have standing to litigate about everything.'" *Id.*, *citing Garland v. Orlans, PC.* 999 F.3d 432, 440 (6th Cir. 2021). Defendants assert that Plaintiff's alleged anxiety and emotional distress are not a cognizable injury that could be recognized by this Court. *Id.*

### 4. Citibank's Issuance of IRS Form 1099-C Does Not Extinguish a Debt

Defendants assert that the IRS Form 1099-C Plaintiff received from Citibank does not, by itself, constitute an extinguishing of Plaintiff's debt. *Id.* at 10–11. Defendants point to other courts which have "declared that '[a]ccording to the Internal Revenue Service, the issuance of a Form 1099–C does not, alone, operate to extinguish a debt . . . The Internal Revenue Service does not view a Form 1099–C as an admission by the creditor that it has discharged the debt and can no

longer pursue collection.'" *Id.*, *citing Ware v. Bank of America Corporation*, 9 F.Supp.3d 1329, 1340-41 (N.D. Ga. 2014) (internal quotations omitted). As such, Defendants contend that "since the form cannot operate to extinguish a debt, no cause of action can exist against Couch for attempting to collect the debt. Accordingly, the allegation is without merit." *Id.* at 11.

**5. Evidentiary Issues Surrounding the Talbott Affidavit Do Not Create a Cause of Action**

Defendants contend that Plaintiff's concerns around the Talbott affidavit from the state action concern "the same factual scenario and statutory scheme as *Bugg*." *Id.* at 12, *citing Bugg v. Midland Funding, LLC*, No. 619-cv-06017-RTD, 2019 U.S. Dist. LEXIS 140251, 2019 WL 3936454, at *8 (W.D. Ark. Aug. 19, 2019). Defendants assert that in *Bugg*, the court held that a dismissal for failure to state a claim was proper after the plaintiff didn't allege the information in a creditor's affidavit of debt was false but contended that it constituted a false representation since it was allegedly robo-signed by an individual lacking personal knowledge. *Id.* Defendants state that "[b]ecause Gunning does not take issue with the amount alleged due in the affidavit but instead makes allegations unsupported by any material facts, she has failed to state a claim upon which relief can be granted." *Id.*

**C. Discussion**

Defendants correctly identify that many of the claims brought by Plaintiff are time-barred under the one-year statute of limitations provided by 15 U.S.C. §1692k(d). Plaintiff's first count challenges the validation of debt by Defendants under 15 U.S.C. §1692(a) & (b). Docket No. 1, p. 3. The Sixth Circuit has weighed in on what constitutes valid verification under §1692(b), stating:

> The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation. This information does not have to be extensive. It should provide the date and nature of the

> transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date.

*Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785–86 (6th Cir. 2014). While Plaintiff relies on *Chaudhry v. Gallerizzo*, ("[p]roviding account statements does not constitute 'verification' of a debt buyer's right to collect"), that is not reflective of the requirements under *Haddad* nor an accurate depiction of *Chaudry's* holding. Docket No. 17, p. 2, *quoting Chaudhry v. Gallerizzo*, 174 F.3d 394, 401 (4th Cir. 1999). In addition to the fact that *Chaudhry* is a Fourth Circuit decision and not binding on this Court, the *Chaudhry* court held that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." *Chaudhry*, 174 F.3d at 406. Plaintiff acknowledged in her complaint that Defendants responded to a validation request with "several monthly account statements." Docket No. 1, p. 2.

Even if it is plausible that the statements submitted by Defendants were inadequate to verify the alleged debt under 15 U.S.C. §1692(a) & (b), Plaintiff's complaint is time-barred under 15 U.S.C. §1692k(d). Plaintiff acknowledged receiving a packet of information with account statements on July 23, 2024, and asserted that the information from Defendants was insufficient to verify the alleged debt. Docket No. 1–2, p. 40. Couch responded to Plaintiff's allegations in a reply email on July 24, 2024, by stating "my client considers the validation packet provided as a sufficient response to your inquiry." *Id*. at 42. Taking Plaintiff's account of events in the complaint as accurate, the alleged violation of 15 U.S.C. §1692(a) & (b) regarding verification took place on or about July 23, 2024 (Defendants' inadequate verification) or July 24, 2024 (subsequent clarification that Couch considered the verification complete).

Under the plain language of 15 U.S.C. § 1692k(d), the statute of limitations "begins to run on the date the alleged FDCPA violation actually happened." *Rotkiske*, 589 U.S. at 13. As such, regardless of whether Plaintiff only discovered the violation after Defendants ignored subsequent requests, the clock for the statute of limitations on claims regarding verification of the debt started when the alleged violation occurred and not the point of discovery. *Id.* This renders Plaintiff's claim regarding the debt verification time-barred as of either July 23 or July 24, 2025. As a result, even when viewing the facts of the complaint in the light most favorable to Plaintiff, the present case (filed on September 11, 2025) falls outside of the one-year statute of limitations. As a matter of law, this claim should be dismissed with prejudice.

Plaintiff's second count centers around the affidavit provided in the state litigation. Docket No. 1, pp. 3–4. Plaintiff asserts she was served with the state lawsuit on June 4, 2024, and that the lawsuit contained the affidavit from Ms. Talbott. *Id.* at 2–3. As such the statute of limitations began to run when Plaintiff knew or should have known about the alleged FDCPA violation in the affidavit. *Rotkiske*, 589 U.S. at 13. Given that the Plaintiff's second count is entirely grounded in the documents provided when she was served with the state litigation, the alleged FDCPA violation took place on June 4, 2024. The Plaintiff likely knew, or should have known, about the potential violations on or about the date she was served.

Plaintiff's assertion in her Response that "[t]he key violations alleged–the June 2024 service with an inadequate affidavit, the July 2025 validation request with an inadequate response, and the August 2025 Final Notice–all occurred within one year of filing" is simply false as it relates to the June 2024 service. Every alleged FDCPA violation has its own discrete statute of limitations, and therefore the June 4, 2024, alleged violation's statute of limitations became time-barred on June 4, 2025. Docket No. 17, p. 5; *see Bouye*, 41 F.4th at 491. In fact, in that same paragraph,

Plaintiff asserts that the issuance of a 1099-C form in 2023 "does not create a violation until Defendants' subsequent collection activities using a stale affidavit in 2024, which is clearly within the statute of limitations." Docket No. 17, p. 5. Plaintiff's Response acknowledges that the alleged violation occurred when Defendants used the affidavit to support collection activities, but incorrectly asserts that the alleged violation took place within the statute of limitations. As a result, the violation alleged in this count is time-barred and, as a matter of law, this claim should be dismissed with prejudice.

Plaintiff's third count should similarly be dismissed. The allegedly deceptive means taken by Defendants include "relying on a stale, boilerplate affidavit, failing to disclose accurately their debt collector status, and misrepresenting the nature of the collection action." Docket No. 1, p. 4. As discussed above, alleged violations regarding the affidavit were time-barred when the present lawsuit was filed. The accusations around failing to disclose the debt collector status and misrepresenting the nature of the collection action are not clearly laid out in the complaint. *See id.* Plaintiff's Response only states that the FDCPA violations in the third count are "[u]sing a deceptive, boilerplate affidavit that fails to disclose accurate debt collector status and misleads regarding collection authority." Docket No. 17, p. 4. Because Plaintiff appears to assert that the violation alleged in the third count comes from the affidavit, as a matter of law, this claim should be dismissed with prejudice.

Plaintiff's fourth count alleges that Defendants used unfair and unconscionable means to attempt collection under 15 U.S.C. §1692f(1). Docket No. 1, p. 4. When considering what constitutes unfair and unconscionable means under 15 U.S.C. §1692f, "[a]t least one court in the Sixth Circuit has explained that this phrase is 'referring to practices that are shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness,' in the eyes of the least

sophisticated consumer." *Branch v. Freedom Mortgage Corporation,* No. 2:24-cv-00005, 2025 U.S. Dist. LEXIS 7827*, 2025 WL 208754, at *2 (M.D. Tenn. Jan. 14, 2025). Plaintiff's allegation of Defendants' use of unfair and unconscionable means "including seeking amounts not permitted by law or contract, and pursuing claims without proof of ownership" appears to be centered around the IRS Form 1099-C that Plaintiff received from Citibank. Docket No. 1, p. 4; *see also* Docket No. 1, p. 2. Plaintiff concedes that Defendants "correctly note[] that courts have held that a 1099-C form does not legally discharge a debt." Docket No. 17, p. 5. Plaintiff contends this strengthens her case because it raises questions about Defendants' legal authority to collect and because the failure of Defendants to disclose these facts constitutes false and misleading representations. *Id.* at 5. However, Plaintiff has not provided specific information regarding the alleged unfair and unconscionable means used by Defendants outside of a conclusory statement. *See id.*

If the allegations are grounded in the verification of debt or affidavit from state litigation, they are time-barred under 15 U.S.C. § 1692k(d). Even if the unfair and unconscionable means to attempt collection took place within the statute of limitations, Plaintiff has not provided enough information to meet the federal pleading standard. *See Iqbal*, 556 U.S. at 678; *see also Martin*, 391 F.3d at 712. However, dismissal of this claim without prejudice is appropriate. It is possible that Plaintiff is able to provide more specific factual allegations that rise above a mere conclusory statement regarding actions taken by Defendants within the statute of limitations. Plaintiff, especially as a pro se litigant, should not be precluded from re-filing a suit if she feels that she can adequately meet the federal pleading requirements.

Plaintiff's fifth count alleging systemic false attestation practices under 15 U.S.C. §1692e(10) & §1692f should similarly be dismissed without prejudice. When it comes to assessing potential violations, "[t]he Sixth Circuit has added that the debt collector's statement must be

materially false or misleading to violate Section 1692e." *Branch,* 2025 WL 208754, at *2. Plaintiff's complaint lacks specific allegations as to where the systemic false attestation practices occurred. Docket No. 1, p. 4. Plaintiff's Response to the pending motion only references the "use of robo-signed affidavits as a systematic practice." Docket No.17, p. 4. As discussed above, alleged violations regarding the specific affidavit in question are time-barred under 15 U.S.C. § 1692k(d). If Plaintiff is alleging that there have been systematic false attestation practices in other communication or interactions with Defendants, it is not clear from the facts presented in the complaint. Even with a liberal construction of the complaint, there is not enough here to meet the pleading standard needed to survive a 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678; *see also Martin*, 391 F.3d at 712.

Plaintiff's sixth and final count alleges Defendants' actions constitute harassment under 15 U.S.C. §1692d. Docket No. 1, p. 4. The complaint contains little factual information to substantiate these allegations, as it only lists "[s]ystematic non-response to validation creating harassment pattern" and "[c]oordinated multi-attorney pressure tactics." *Id.* While this Court must accept all factual allegations in Plaintiff's complaint as true for the purposes of this motion to dismiss, a mere recitation of the elements of a cause of action is insufficient to meet the pleading standard. *Iqbal*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 555. Here, Plaintiff appears to reference Defendants' lack of response to her second request to validate the alleged debt on July 29, 2025, Defendants' change in representation from Ms. Elizabeth Cash to Mr. Chad Benoit, or possibly general communication from Defendants. Docket No. 1, pp. 18, 27–31, 76.

There is nothing in the complaint that rises above a basic recitation of the elements of harassment under 15 U.S.C. §1692d. *See* Docket No. 1, p. 4. In *Branch*, albeit under different circumstances, this Court found that the FDCPA only prohibits certain conduct from debt

collectors and "impose[s] no mandatory affirmative obligations." *Branch,* 2025 WL 208754, at *4. Defendants responded to Plaintiff's June 2024 request for validation, and Plaintiff has not provided any specific information on how the lack of response to Plaintiff's July 2025 request constitutes harassment under the FDCPA. Docket No. 1, p. 4. 15 U.S.C. §1692d(1)–(6) contains a list of examples that would constitute harassment violations under the statute. To illustrate the standard set under 15 U.S.C. §1692d(1)–(6), some of the listed violations include "use or threat of use of violence or other criminal means to harm the physical person . . . use of obscene or profane language . . . [and] engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. §1692d (1)–(2), (5). If Plaintiff is alleging that Defendants' non-response in July 2025 constitutes harassment as used in 15 U.S.C. §1692d, she has not met the pleading standards, as she failed to list more than a mere recitation of the elements of a cause for action. *See* Docket No. 1, p. 4. Nor do the alleged multi-attorney pressure tactics rise above a mere recitation of the elements of a cause of action. Plaintiff has not substantiated the claim with anything more than a conclusory statement about the harm caused by Defendant. However, dismissal of this claim without prejudice is appropriate for the same reasons as discussed for the fourth count. Plaintiff should not be precluded from re-filing a suit if she feels that she can adequately meet the federal pleading requirements with alleged FDCPA violations within the statute of limitations.

## III. CONCLUSION

For the reasons set forth above, the undersigned recommends that Defendants' Rule 12(B)(6) Motion to Dismiss should be **GRANTED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this

Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**